OPINION
{¶ 1} Appellant, Alan J. Christian, appeals his jury conviction and sentencing for felonious assault on a peace officer, a first-degree felony, with a firearm specification in violation of R.C. §2903.11(A)(2)(D) and R.C. § 2941.145(A) in the Mahoning County Court of Common Pleas.
 {¶ 2} Appellant raises four assignments of error on appeal. He alleges that he was denied the effective assistance of counsel; that his conviction was against the manifest weight of the evidence; that he was convicted with insufficient evidence; and that the trial court did not make sufficient findings to support his sentencing. For the following reasons, Appellant's assigned errors lack merit, and his conviction and sentencing are hereby affirmed.
 {¶ 3} On January 18, 2002, Appellant and his live-in girlfriend, Debbie Hudson, had an argument at approximately 3:00 a.m. Their fight apparently began when Hudson told Appellant not to drive to Painesville after he had been drinking. Hudson pushed Appellant away from the door during their argument, and he pushed her back in an attempt to leave. Appellant then left home in Hudson's truck that was regularly available for his use. (Tr. Vol. 1, p. 102, 164-166.)
 {¶ 4} Hudson contacted the Sebring Police Department, and Officer Daniel Guy responded. Hudson advised Guy that Appellant took her truck and that she did not want him to drive to Painesville. Hudson advised Guy that Appellant might be at his friend's house, Dale Yaggi. The house was only a short distance away. (Tr. Vol. 1, pp. 165-167.)
 {¶ 5} Hudson signed a domestic violence complaint against Appellant. The record reflects conflicting trial testimony as to whether her signature was obtained under the guise that she was signing a form to get her truck back. (Tr. Vol. 1, pp. 166-167.)
 {¶ 6} Officer Guy radioed Officer Michael Porter about Appellant's potential location. Officer Porter identified Hudson's truck at Mr. Yaggi's house. Officer Porter approached the house and knocked on the door to inquire whether Appellant was inside.
 {¶ 7} After Officer Porter entered the house, Appellant and Officer Porter had a physical altercation. Officer Porter testified that Appellant had a gun and was trying to point it toward Officer Porter's head. Officer Guy's testimony supports this version. Appellant's three friends, however, testified that Appellant never had possession of a gun that night. Appellant's felonious assault conviction stems from this incident.
 {¶ 8} Appellant's first assigned error asserts:
 {¶ 9} "Appellant was Denied the Effective Assistance When Counsel Failed to File a Pretrial Motion to Suppress Evidence and to Renew the Motion for Judgment of Acquittal at the Close of All Evidence. U.S. CONST. amend. VI and XIV and OHIO CONST., art. I, §§ 1, 2, 10, and 16."
 {¶ 10} The U.S. Supreme Court outlined a two-part test for evaluating whether assistance of counsel was so ineffective it requires a reversal of the defendant's conviction in Strickland v. Washington:
 {¶ 11} "First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable.
 {¶ 12} "* * *
 {¶ 13} "* * * [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" (Citation omitted.) Strickland v. Washington (1984),466 U.S. 668, 687-689, 104 S.Ct. 2052, 80 L.Ed.2d 674; see also State v.Thompson (1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407.
 {¶ 14} Appellant first asserts that his trial counsel was ineffective in failing to file a pre-trial motion to suppress. Appellant claims that he was prejudiced as a result of his counsel's failure since the arresting officers were making a warrantless arrest with insufficient evidence to justify the arrest. As a result of the allegedly unlawful arrest, Appellant engaged in behavior that ended in Appellant's felonious assault on Officer Porter.
 {¶ 15} This assignment of error is based on several assertions by Appellant. Appellant claims Hudson gave the police no indication that domestic violence occurred; she did not seek Appellant's arrest; she refused to give a statement or file a report on the night of Appellant's arrest; and she only went to the police station and completed a statement after three calls from the police and their representation that she would not get her truck keys back until she gave a statement. (Tr. Vol. 1, pp. 164-166, 169-170.)
 {¶ 16} Appellant's argument that there was insufficient evidence to support Appellant's warrantless arrest, however, was rebutted by the testimony of the arresting officers. Officer Guy testified that in responding to the call at Appellant's home, Hudson advised him that she and Appellant had a physical altercation. Officer Guy asked her if she wanted to file domestic violence charges, and she responded affirmatively and signed a complaint. (Tr. Vol. 1, pp. 102-104.) Officer Guy radioed Officer Porter advising him that she had signed the complaint and alerted him to Appellant's possible location. (Tr. Vol. 1, p. 119.) The officers eventually placed Appellant under arrest at the Yaggi residence. (Tr. Vol. 1, p. 104.)
 {¶ 17} R.C. § 2935.03(B), arrest and detention until warrant can be obtained, provides:
 {¶ 18} "(1) When there is reasonable ground to believe that an offense of * * * domestic violence as defined in section 2919.25 of the Revised Code, * * * has been committed within the limits of the political subdivision, * * * a peace officer * * * may arrest and detain until a warrant can be obtained any person who the peace officer has reasonable cause to believe is guilty of the violation.
 {¶ 19} "* * *
 {¶ 20} "(3)(a) For purposes of division (B)(1) of this section, a peace officer described in division (A) of this section has reasonable grounds to believe that the offense of domestic violence * * * has been committed and reasonable cause to believe that a particular person is guilty of committing the offense if any of the following occurs:
 {¶ 21} "(i) A person executes a written statement alleging that the person in question has committed the offense of domestic violence * * * against the person who executes the statement or against a child of the person who executes the statement."
 {¶ 22} Based on the evidence presented at trial, Appellant cannot show that his counsel's failure to file a motion to suppress constitutes a deficiency. Hudson's signed domestic violence complaint constituted sufficient and reasonable grounds to support Appellant's warrantless arrest for domestic violence. R.C. § 2935.03(B)(3)(a)(i). Defense counsel does not have to file a motion to suppress in every case. Where the record in a case does not demonstrate grounds for suppression, the failure to file a motion to suppress does not constitute ineffective assistance of counsel. State v. Flors (1987), 38 Ohio App.3d 133, 139,528 N.E.2d 950. Thus, this alleged error lacks merit.
 {¶ 23} Appellant's second argument alleging that he was denied the effective assistance of counsel involves yet another allegation that his counsel failed to file a motion to suppress. Appellant claims that Officer Porter unlawfully entered Mr. Yaggi's home without a search warrant in order to arrest Appellant, and thus, counsel was required to file a motion to suppress any evidence collected by the officers subsequent to this alleged Fourth Amendment violation.
 {¶ 24} There was conflicting evidence presented at trial in regard to Appellant's claim that Officer Porter unlawfully entered Mr. Yaggi's residence in violation of Appellant's Fourth Amendment right to be free from unlawful searches and seizures. Based on the record here, it is not clear whether Officer Porter's entry was consensual. However, resolution of this issue is not crucial to our decision, here. Whether Officer Porter illegally entered the Yaggi home or not, Appellant must still prove that the result of his trial would have differed if his counsel had prevailed on a motion to suppress. Thompson, supra. The felonious assault of an officer after an unlawful entry is not justified or privileged conduct. State v. Howard (1991), 75 Ohio App.3d 760, 770,600 N.E.2d 809. Even if we assume for the sake of argument that Officer Porter's entry into the Yaggi home was unlawful, Appellant must still prove that the result of his trial would have differed.
 {¶ 25} In Appellant's suppression argument, he asserts that but for the officer's entry into the home, he would never have had the opportunity to commit felonious assault on a peace officer. Alternatively, he claims that evidence of the assault would be inadmissible. However, while individuals can lawfully refuse consent to a warrantless entry and/or search, this right to refuse entry is limited.Howard, 75 Ohio App.3d 760, 771, 600 N.E.2d 809, citing MiddleburgHeights v. Theiss (1985), 28 Ohio App.3d 1, 501 N.E.2d 1226, syllabus paragraph two. Even though an officer may unlawfully enter a private residence, the residence's occupants are not privileged to assault the officers after this unlawful entry. Id. at 5. While an occupant can refuse to consent to an entry and search, such, "as locking or closing the door or physically placing one's self in the officer's way," the assertion of the right to refuse consent to a search cannot itself constitute a crime; refusal cannot include violence against an officer.Howard at 772; Middleburg at 4.
 {¶ 26} It is worth noting that unlike the situation where a defendant is charged with resisting arrest, a lawful arrest is not an element of felonious assault on a peace officer, which prohibits one from knowingly causing or attempting to cause physical harm to a peace officer by means of a deadly weapon. R.C. § 2903.11(A)(2).
 {¶ 27} Thus, even if we assume Officer Porter's entry into the Yaggi residence was unlawful, Appellant's commission of felonious assault after that entry was in no way justified or privileged. Thus, his argument on this issue lacks merit. Appellant was in no way prejudiced by his counsel's failure to file a motion to suppress because there was no reasonable basis to believe that such motion could be granted.
 {¶ 28} Finally, Appellant asserts that his trial counsel was ineffective for failing to renew his motion for acquittal at the close of his case and again at the close of all of the evidence. Appellant's trial counsel did request an acquittal, pursuant to Crim.R. 29, at the close of the state's case. (Tr. Vol. 1, p. 143.)
 {¶ 29} To prevail on appeal, Appellant must establish that his counsel erred in failing to renew his motion for acquittal and that Appellant was prejudiced as a result. Thompson, 33 Ohio St.3d 1, 10, 514 N.E.2d 407. Thus, we must determine whether the trial court could have granted a motion for acquittal had counsel requested it at the close of all of the evidence.
 {¶ 30} Our standard of review on this issue, which is essentially a sufficiency of the evidence claim, is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Williams (1996) 74 Ohio St.3d 569,660 N.E.2d 724, cert. denied 117 S.Ct. 109, 519 U.S. 835, 136 L.Ed.2d 62;State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 31} Appellant's charge of felonious assault on a peace officer required the state to establish, at a minimum, that Appellant: (1) knowingly; (2) attempted to cause physical harm; (3) to a peace officer; (4) by means of a deadly weapon. R.C. § 2903.11(A)(2).
 {¶ 32} A person acts knowingly when he is aware that his conduct will probably cause a certain result. R.C. § 2901.22(B). "Attempt" for purposes of R.C. § 2903.11 is defined as follows: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. § 2923.02(A).
 {¶ 33} On review of this issue, we must view the trial testimony in a light most favorable to the state. Bearing this in mind, according to Officer Porter, after he advised Appellant that he was going to arrest him, Appellant, "* * * put a cigarette in his mouth and said, `F . . . this,' and began to reach under the chair." (Tr. Vol. 1, p. 32.) Then Officer Porter saw Appellant lift up the chair's skirt, and saw the back of a gray and silver semi-automatic pistol under the chair. Officer Porter recognized that the pistol was in the "loaded cocked position." At that point, Officer Porter drew his gun, pointed it at Appellant, and ordered him to put the gun down. One of Appellant's friends who was also in the house, Cathleen Fellure, jumped on Appellant and was calling his name. (Tr. Vol. 1, pp. 32-38.)
 {¶ 34} Officer Porter believes that Appellant had his finger on the trigger and that Ms. Fellure grabbed the gun. Appellant and Officer Porter struggled in the chair for the weapon. During this altercation, Appellant was trying to point the weapon toward Officer Porter's face. During the struggle, both Officer Porter and Appellant stood up while still struggling for the gun; Officer Porter could feel the pressure of Appellant's wrist trying to point the gun at him. To the best of Officer Porter's knowledge, Appellant's finger was still on the trigger. At one point during the struggle, Appellant was on top of Officer Porter in the chair, and Appellant was trying to point the gun at the top of Officer Porter's head. Officer Guy arrived during the melee and jumped on Appellant; Officer Porter heard the gun fall on the ground. (Tr. Vol. 1, pp. 39-44.)
 {¶ 35} Officer Guy testified that upon his arrival at the Yaggi residence he heard loud voices, and he ran into the house. Upon entering the home Officer Guy saw Appellant and Officer Porter wrestling in a chair. Officer Guy testified that, "* * * Officer Porter had his right arm around [Appellant's] neck and he was holding [Appellant's] right wrist, * * * with Officer Porter's left hand." (Tr. Vol. 1, p. 107.) Appellant had, "a Ruger semiautomatic, P series semiautomatic weapon," in his right hand. (Tr. Vol. 1, p. 107.)
 {¶ 36} The record also contains testimony to the contrary. Cathleen Fellure testified that Appellant never touched the gun. She testified that when the struggle ensued, she moved the gun under an ottoman and only the empty gun case remained under Appellant's chair. (Tr. Vol. 1, p. 198.) Mr. Yaggi and Thomas Folson, a houseguest of Mr. Yaggi on the night in question, likewise testified that they never saw Appellant with a gun. (Tr. Vol 2, pp. 231, 261.)
 {¶ 37} Notwithstanding the conflicting testimony, when viewing the evidence in a light most favorable to the state, a rational trier of fact could have found the essential elements of the felonious assault on a peace officer were proven beyond a reasonable doubt. Williams,74 Ohio St.3d 569, 660 N.E.2d 724. Based on Officer Porter's testimony alone, there was sufficient evidence as a matter of law to support that Appellant knowingly attempted to cause physical harm to Officer Porter with the gun. Officer Porter was wearing his police uniform on the day of the offense. (Tr. Vol. 1, p. 23.) One cannot aim a loaded and cocked weapon toward another's head without knowing this conduct will probably cause a certain result. R.C. § 2901.22(B). As such, had Appellant's trial counsel renewed his motion for acquittal at the close of all evidence, it undoubtedly would have been overruled. As such, this argument also lacks merit.
 {¶ 38} Based on the foregoing, Appellant's first assignment of error is overruled in its entirety. He cannot establish that he was denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the Constitution.
 {¶ 39} Appellant's second assignment of error asserts:
 {¶ 40} "Appellant was Denied Due Process and the Liberties Secured by OHIO CONST. art. I, §§ 1, 2, 10, and 16 Because his Conviction for Felonious Assault is Against the Manifest Weight of the Evidence."
 {¶ 41} In reviewing a case relative to a manifest weight of the evidence argument, a court of appeals after, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.
 {¶ 42} All three court of appeals judges reviewing the case must unanimously concur in order for a court of appeals to reverse a jury's judgment on the weight of the evidence. Thompkins at paragraph four of the syllabus.
 {¶ 43} Further, a court of appeals must normally defer to the trier of fact's decision as to the weight given to the evidence and the credibility of the witnesses because the trier of fact is, "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273; State v. DeHass
(1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 44} As set forth in the first assigned error, Officer Porter's testimony alone is sufficient to establish the essential elements of felonious assault on a peace officer. However, unlike a sufficiency of the evidence argument, this assigned error requires a court to consider and weigh all of the evidence, including all reasonable inferences and witness credibility, and then determine whether the jury, "clearly lost its way." Id.
 {¶ 45} In support of this claimed error, Appellant directs this Court's attention to the fact that only the two police officers testified that Appellant had a gun in his possession on the date in question and that he was trying to aim it at Officer Porter.
 {¶ 46} The other three witnesses to the incident stated that Appellant never touched a gun that night. Ms. Fellure testified that she moved Mr. Yaggi's gun out from under the chair that Appellant occupied, that she placed it under the ottoman and that only the empty gun case remained under Appellant's chair during the altercation. (Tr. Vol. 1, p. 198.)
 {¶ 47} Mr. Folson testified that he saw Ms. Fellure slide the gun under the ottoman and that he never saw Appellant with a weapon during the entire incident. (Tr. Vol. 2, pp. 226, 231.) Mr. Folson says he saw Officer Porter aim his gun at Appellant and grab Appellant by the neck with his other hand. (Tr. Vol. 2, p. 239.) After Officer Guy's arrival and Appellant's arrest, Mr. Folson saw Ms. Fellure take the gun from under the ottoman and into the kitchen. (Tr. Vol. 2, p. 242.) Officer Porter came back into the Yaggi household, knocked the chair on its side, and found the empty gun case. (Tr. Vol. 2, pp. 242-243.)
 {¶ 48} Further, Mr. Yaggi testified that Ms. Fellure told him that she had placed the gun under the ottoman during the struggle and then she put it in the kitchen. (Tr. Vol. 2, p. 255.) Mr. Yaggi usually kept his gun in its case under the chair that Appellant was sitting in, but says he took the gun out of its case that day because he had received a death threat earlier that day. (Tr. Vol. 2, pp. 256-257.)
 {¶ 49} When Mr. Yaggi entered the room of the incident, he saw Officer Porter's hand on Appellant's chest and his gun at Appellant's head. Mr. Yaggi never saw Appellant handling a gun. (Tr. Vol. 2, pp. 261-262, 266.)
 {¶ 50} It is important to note that Ms. Fellure was charged with tampering with evidence for her actions after the officers secured Appellant. After the struggle, she did move the gun into the kitchen and subsequently denied that there was even a gun in the house. Mr. Yaggi later revealed the gun's location. (Tr. Vol. 1, pp. 83-87.) Appellant argues that although Ms. Fellure may have had a motive to lie because of her tampering with the evidence charge, Mr. Yaggi and Mr. Folson had no reason to lie.
 {¶ 51} However, Appellant fails to mention that Ms. Fellure's reason to lie at trial, i.e., her tampering with evidence charge, could also be a reason for Mr. Yaggi and Mr. Folson to be untruthful. Mr. Yaggi and Ms. Fellure shared a house as a couple, and Mr. Folson was a tenant and a friend of that same household. It is certainly not a stretch to imagine that Mr. Yaggi would try to protect his girlfriend and that Mr. Folson would lie to protect his friend.
 {¶ 52} There is conflicting testimony about this incident in the record, and the two versions of the incident cannot be reconciled. Clearly, one side's witnesses were not telling the truth. There are no compelling indicators in the text of the transcript that overwhelmingly support Appellant's theory, and there is no indication that the jury clearly lost its way. As such, this Court must respect the deference due to the jury's conclusion. In applying the manifest weight standard of review to the instant cause, we must overrule this assignment of error.
 {¶ 53} Appellant's third assignment of error asserts:
 {¶ 54} "Appellant was Denied Due Process and Liberties Secured by OHIO CONST. art. I, §§ 1, 2, 10, and 16 When He Was Convicted of the Offense of Felonious Assault and There Was Insufficient Evidence to Support the Conviction."
 {¶ 55} As addressed in Appellant's first assigned error relative to his counsel's failure to renew his motion for acquittal, the state presented sufficient evidence to support the conviction.
 {¶ 56} "An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard that an appellate court uses to review a sufficiency-of-theevidence claim. * * * Whether the state presented sufficient evidence is a question of law dealing with adequacy." Statev. Ali, 154 Ohio App.3d 493, 797 N.E.2d 1019, 2003-Ohio-5150, at ¶21, citing State v. Carter (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965;Thompkins, 78 Ohio St.3d 380, 387, 678 N.E.2d 541.
 {¶ 57} When viewing the evidence in a light most favorable to the state, a rational trier of fact must have been able to find the essential elements of the charge were proven beyond a reasonable doubt.
 {¶ 58} In convicting on a charge of felonious assault on a peace officer, the state is required to establish, at a minimum, that Appellant (1) knowingly; (2) attempted to cause physical harm; (3) to a peace officer; (4) by means of a deadly weapon. R.C. § 2903.11(A)(2).
 {¶ 59} Officer Porter testified that Appellant pointed or attempted to point a loaded pistol at his head at least twice during the struggle. (Tr. Vol. 1, pp. 40, 42.) Further, Officer Porter, a uniformed police officer, advised Appellant before their struggle that he was going to place him under arrest. (Tr. Vol. 1, pp. 23, 31-32.)
 {¶ 60} Based on Officer Porter's testimony alone, the offense of felonious assault was supported by sufficient evidence. Appellant attempted to aim a cocked gun at a uniformed police officer's head. Thus, this assigned error lacks merit and is overruled.
 {¶ 61} In Appellant's final assignment of error he argues:
 {¶ 62} "The Trial Court Abused its Discretion in Imposing More than the Minimum Sentence Without Making Factual Findings to Support the Sentence, U.S. CONST. amend. VIII and XIV; OHIO CONST., art. I, §§ 1, 2,9, and 16."
 {¶ 63} Appellant was found guilty of felonious assault on a peace officer, a firstdegree felony, with a firearm specification in violation of R.C. § 2903.11(A)(2) and R.C. § 2941.145(A). The trial court subsequently sentenced him to five years of imprisonment on the felonious assault conviction and three consecutive years on the gun specification, for a total of eight years.
 {¶ 64} Appellant claims that the trial court imposed more than the minimum sentence without making the requisite findings. He alleges that the trial court's rote recitation of the necessary findings without analysis denies him effective appellate review.
 {¶ 65} Appellant's conviction of felonious assault on a peace officer is a firstdegree felony under R.C. § 2903.11(D), which involves a mandatory prison term. R.C. § 2929.13(F)(8). R.C. § 2929.14(A)(1) provides for a three, four, five, six, seven, eight, nine, or ten-year prison term for this offense. Appellant's five-year sentence on this offense is neither the maximum nor the minimum sentence.
 {¶ 66} R.C. § 2929.14(B) provides in part:
 {¶ 67} "* * * if the court imposing a sentence upon an offender for a felony * * * is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 68} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 69} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 70} Since Appellant was sentenced to more than the minimum sentence, the trial court was required to make one of the two R.C. §2929.14(B) findings. The first factor was evidently inapplicable.
 {¶ 71} As to the second factor, the trial court concluded that the shortest prison term would demean the seriousness of the offense and that it would not protect the public. (Sentencing Tr., pp. 12-13, Aug. 28, 2002, Judgment Entry of Sentence.)
 {¶ 72} On appeal, Appellant claims that the trial court's simple recitation of the R.C. § 2929.14(B)(2) findings was insufficient and that its departure from the minimum sentence was in error.
 {¶ 73} Appellant asserts that the trial court abused its discretion in sentencing. However, appellate review of felony sentencing decisions is a "meaningful review": "`Meaningful review' means that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." State v.Comer, 99 Ohio St.3d 463, 466, 793 N.E.2d 473, 2003-Ohio-4165, ¶ 10; R.C. § 2953.08.
 {¶ 74} Appellant argues that the trial court should have stated its analysis supporting its departure from the minimum sentence and not just the requisite findings. Appellant is essentially claiming that the trial court should have given reasons supporting its findings. However, this is not required. This Court has recently addressed the issue in Ohio v.Kapsouris, 7th Dist. No. 02 CA 230, 2004-Ohio-5119. In analyzing a nonminimum sentence for a first-degree felony, we held that a court is not required to explain the reasons supporting its findings under R.C. §2929.14(B). Id. at ¶ 84.
 {¶ 75} The Kapsouris opinion also dealt with the Ohio Supreme Court's decision in Comer, supra. Comer held in part that R.C. § 2929.19(B)(2) and § 2929.19(E)(4) require a court to state its reasons supporting the requisite findings on the record at the sentencing hearing before imposing consecutive sentences. Id. at ¶ 20. However, under R.C. §2929.14(B), when imposing a nonminimum sentence on an offender, a trial court must only make statutory findings on the record. Kapsouris at ¶82. "[T]he trial court is not required to state reasons supporting its finding that the shortest prison term would demean the seriousness of the offense or would not adequately protect the public on the record." Id at ¶ 84.
 {¶ 76} In reviewing the court's departure from the minimum sentence relative to Appellant's felonious assault conviction, the court made the requisite findings on the record at the sentencing hearing. It found: "* * * pursuant to 2929.14(B) that the shortest prison term possible would demean the seriousness of this offense and will not adequately protect the public and therefore imposes a greater term." (Sentencing Tr., p. 12.)
 {¶ 77} Based on the foregoing, Appellant's nonminimum sentence on his felonious assault conviction is hereby affirmed since neither analysis nor reasons to support the court's findings were required on the record. The trial court complied with R.C. § 2929.19(B)(2).
 {¶ 78} Appellant was also convicted of a firearm specification, under R.C. § 2941.145(A). R.C. § 2929.14(D)(1)(a)(ii) required the trial court to impose a three-year prison term.
 {¶ 79} Appellant does not dispute his gun specification sentence or the fact that it must be served consecutive to his felonious assault term. However, it is worth noting that R.C. § 2929.14(E)(1)(a) requires mandatory prison terms under division (D)(1)(a) to be served, "consecutively to any other mandatory prison term imposed * * * for the underlying felony[.]"
 {¶ 80} Appellant's firearm specification and felonious assault prison terms were mandatory. R.C. § 2929.14(D)(1)(a)(ii); R.C. § 2929.13(F)(8). "[W]hen a trial court is required to impose consecutive prison terms pursuant to R.C. 2929.14(E)(1) through (3), it need not state supporting reasons for the imposition of such consecutive sentences[.]" State v.Patterson, 12th Dist. No. CA2001-09-222, 2002-Ohio-5996, ¶ 26; See alsoState v. Sturgill, 2nd Dist No. 19815, 2004-Ohio-672, ¶ 22; State v.Dudenas, 8th Dist. No. 81461, 81774, 2003-Ohio-1000, ¶ 24. As such,Comer is inapplicable since it specifically dealt with a court's discretionary option to impose consecutive terms under R.C. §2929.19(E)(4). Comer supra.
 {¶ 81} Based on the foregoing, Appellant's final assignment of error lacks merit and is overruled.
 {¶ 82} For the foregoing reasons, this Court hereby affirms Appellant's jury conviction and sentencing in their entirety.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.