OPINION
{¶ 1} Defendant-appellant, Russell Newsome ("Newsome"), appeals his conviction in the Ashtabula County Court of Common Pleas. Newsome was indicted on two counts of Assault on a Peace Officer, a fourth degree felony in violation of R.C. 2903.13(A) and (C)(3). Following a bench trial, Newsome was found guilty on both counts and sentenced to serve two consecutive twelve-month prison terms. For the following reasons, we affirm the decision of the court below.
 {¶ 2} At about 11:30 p.m., on the evening of November 6, 2002, Newsome came to the Noble residence at 1310 West 8th Street in Ashtabula, Ohio. Newsome was seeking payment for roofing work he had performed for the family. AnnLeen Noble ("Mrs. Noble") answered the door and told Newsome that he would be paid when he finished doing the work. Newsome became belligerent and told Mrs. Noble to call the police. Mrs. Noble obliged by placing an unwanted person call to the Ashtabula Police. Officers Tom Clemens ("Clemens") and James Kemmerle ("Kemmerle") responded at about 11:40 p.m. When the officers arrived at the residence, they did not see Newsome. They then departed in response to another call.
 {¶ 3} Mrs. Noble testified that two or three minutes later, Newsome reappeared beating on the door. Mrs. Noble summoned the police again.
 {¶ 4} This time, Officers Clemens and Kemmerle found Newsome sitting on the porch of the Noble residence. According to the testimony of Mrs. Noble, Kemmerle and Clemens, the officers exited their vehicle and approached Newsome. Officer Kemmerle told Newsome that he was under arrest for criminal trespass and grabbed Newsome by the arm. Newsome pushed Kemmerle back. Kemmerle repeated that Newsome was under arrest and both Kemmerle and Clemens attempted to grab and restrain Newsome. At this point, Newsome struck Officer Clemens and a melee ensued.
 {¶ 5} Newsome testified that he was not told he was under arrest. Newsome further testified that Kemmerle's first act upon approach was to grab him by the throat. He punched Kemmerle's hand away but Kemmerle grabbed him by the throat again. Newsome testified that when tried to punch Kemmerle's hand away a second time, both officers grabbed him and the melee ensued. Newsome concedes that his actions during the melee constituted assault.
 {¶ 6} The officers eventually subdued and placed Newsome under arrest. Newsome was tried and sentenced on May 15, 2003. This appeal timely follows.
 {¶ 7} Newsome raises the following assignment of error: "The defendant-appellant was denied the effective assistance of counsel, contrary to his rights guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Section 10, Article I, of the Ohio Constitution."
 {¶ 8} The Ohio Supreme Court has adopted a two-part test to determine whether an attorney's performance has fallen below the constitutional standard for effective assistance. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal, 87 Ohio St.3d 378, 388-389, citingStrickland v. Washington (1984), 466 U.S. 668, 687-688. In matters regarding trial strategy, courts will generally defer to the judgment of trial counsel, even where "another and better strategy" might have been available. State v. Clayton (1980), 62 Ohio St.2d 45, 49, citing Statev. Lytle (1976), 48 Ohio St.2d 391, 396. A court will only consider reversing on these grounds where the choice of trial strategy so deviates from the standard of reasonableness "that ordinary trial counsel would scoff at hearing of it." State v. Burgins (1988), 44 Ohio App.3d 158,160. The failure to prove any one prong of this two-part test makes it unnecessary for a court to consider the other prong. Madrigal,87 Ohio St.3d at 389, citing Strickland, 466 U.S. at 697.
 {¶ 9} Newsome alleges that trial counsel was ineffective for not advancing a "legally appropriate" defense strategy. At trial, Newsome's counsel advanced the theory of self-defense, which, if established, is a complete defense to an assault charge. E.g. In re Bumpus, 1st Dist. No. C-020776, 2003-Ohio-4307, at ¶ 14; State v. Lemley (Nov. 27, 1996), 4th Dist. No. 95CA24, 1996 Ohio App. LEXIS 5554, at *9. In support of this defense, Newsome testified that the officers choked him, beat him with the baton, and poked him in the eyes. "I was trying to defend myself * * * I was being harmed, too." When asked by trial counsel why he did not submit to the officers and allow himself to be handcuffed, Newsome answered "[b]ecause, when he got there, he grabbed me by the throat and you aren't supposed to do that"; and again, "[b]ecause I felt they were trying to hurt me."
 {¶ 10} Newsome argues that self-defense was not the proper defense: "self-defense must be predicated on legal justification. * * * [O]nly excessive force on the part of the officers could justify his use of force against them." Newsome continues that, because it was doubtful in this case that the officers' conduct amounted to "excessive force," trial counsel should have focused on whether the arrest was lawful. "[I]f the arrest was unlawful, [Newsome] was privileged to forcibly resist that arrest."
 {¶ 11} Newsome is incorrect that he would have been privileged to forcibly resist the officers provided his arrest were unlawful. InColumbus v. Fraley (1975), 41 Ohio St.2d 173, the Ohio Supreme Court expressly abandoned the common law rule allowing forcible resistance to arrest: "In the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest isillegal under the circumstances." Id. at paragraph three of the syllabus (emphasis added).
 {¶ 12} Newsome relies on a mischaracterization of this court's decision in State v. Hendren (1996), 110 Ohio App.3d 496. In Hendren, a prosecution for resisting arrest under R.C. 2921.33(A), we held erroneous a jury instruction to the effect "that a private citizen may not use force to resist an unlawful arrest." Id. at 499. This court wrote: "Appellant argued that it is never unlawful to resist an unlawful arrest. We agree." Id. at 498. Taken out of context, this language fromHendren may be misleading. The basis for the Hendren court's ruling was that "[u]nder R.C. 2921.33(A), a lawful arrest is an element of a crime." Id. The true holding of Hendren is not that a citizen may use force to resist an unlawful arrest, but that a citizen may not be convicted of resisting arrest, even by force, if the arrest is unlawful. A lawful arrest is not an element of assault on a peace officer. State v.Christian, 7th Dist. No. 02 CA 170, 2005-Ohio-1440, at ¶ 26; State v.Peer, 2nd Dist. No. 19104, 2002-Ohio-4198, at ¶ 10. Therefore, where a citizen has forcibly resisted an unlawful arrest, they may be prosecuted for Assault on a Peace Officer, although they would be immune from prosecution for resisting arrest.
 {¶ 13} Accordingly, Newsome's trial counsel was not deficient for advancing the affirmative defense of self-defense instead of arguing the legality of the arrest. Self-defense constituted a valid defense to the charges against Newsome and accorded reasonably well with Newsome's version of the facts.
 {¶ 14} The sole assignment of error is without merit. Newsome's convictions in the Ashtabula County Court of Common Pleas are affirmed.
Ford, P.J., O'Neill, J., concur.