[Cite as *State v. Pope*, 2023-Ohio-865.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio/City of Milan                    Court of Appeals No.  E-22-016

     Appellee                              Trial Court No.  TRC-21-04438

v.

Jacob Pope                                     **DECISION AND JUDGMENT**

     Appellant                             Decided:  March 17, 2023

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio State Public Defender, and
R. Jessica Manungo, Assistant State Public Defender, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a jury trial, defendant-appellant, Jacob Pope, appeals the

December 21, 2022 judgment of the Erie County Municipal Court for Milan, Ohio,

convicting him of operating a vehicle while under the influence of drugs or alcohol and

having physical control of a vehicle while under the influence of drugs or alcohol.  A motion for a stay pending appeal was filed in the trial court and was granted on April 25, 2022.  For the following reasons, we affirm the trial court judgment and terminate the stay.

## I.     Background

{¶ 2} On July 15, 2021, two motorists called 9-1-1 to report that they had observed a driver—later identified as Jacob Pope—operating his vehicle erratically.  The first caller stated that she was driving behind Pope on northbound State Route 4 outside Bellevue and witnessed his vehicle swerve from side-to-side across the lane dividers, almost drive off the road, and nearly veer into a ditch.  Pope was taking his hands off the wheel, throwing his hands around, and clapping.  The caller stopped following him when he turned into the Strawberry Hill gas station.

{¶ 3} The second caller reported that she had been following Pope on State Route 4 beginning at the Bellevue McDonald's.  She saw Pope and another person doing drugs in the McDonald's parking lot; the other person left, and Pope got into the vehicle.  He began driving, but before pulling out of the lot onto Route 20, he dozed off for a moment at the stop sign.  He drove to the Strawberry Hill gas station, and the caller followed.  She observed Pope take more drugs.  He was walking around his car, jumping up and down, and clapping.  He then got in his vehicle and alternated between nodding off and "freaking out," smacking his head against the steering wheel.

2.

**{¶ 4}** Erie County Sheriff's deputies arrived at Strawberry Hill and approached Pope. Pope was talking a lot, his words were running together, he was unable to stand still, and his pupils were constricted—characteristics that can be clues of impairment. Pope denied any drug or alcohol use, but based on their observations and the observations of motorists who reported Pope's erratic driving and behavior, deputies decided to administer field sobriety tests. The deputies specifically suspected that Pope was impaired by drugs—not alcohol—so they also performed ARIDE (Advanced Roadside Impaired Driving Enforcement) testing, designed to identify drug impairment.

**{¶ 5}** Deputies administered the horizontal and vertical gaze nystagmus tests and did not observe clues of impairment, however Pope's left eyelid was tremoring. They administered the walk-and-turn test; Pope stepped off the line several times, raised his arms for balance, and performed an improper turn. They administered the one-leg stand test; Pope showed every possible clue of impairment—he hopped, placed a foot down to regain his balance, and raised his arms for balance. Pope was asked to put his head back and estimate the passage of 30 seconds (the modified Romberg test). After 65 seconds, Pope had still not gaged that 30 seconds had passed, his eyelids tremored, and he swayed back-and-forth—all clues of impairment. Deputies administered the lack of convergence test; Pope's eyes were not able to converge, another clue of impairment. Finally, deputies administered the finger-to-nose test; no clues of impairment were observed from

3.

that test. The deputies saw that Pope's keys were in the ignition of the vehicle, which was parked at an angle at the gas pump.

{¶ 6} Based on the citizen reports of Pope's erratic driving and behavior, the deputies' observations of Pope's slurred speech, his inability to stand still, his constricted pupils, and his poor performance on the walk-and-turn, one-leg stand, modified Romberg, and lack of convergence tests, deputies determined they had probable cause to arrest Pope. He was charged in two separate cases with being in physical control of a vehicle while under the influence of drugs or alcohol, a violation of R.C. 4511.194(B)(1), a first-degree misdemeanor, and operating a vehicle while under the influence of drugs or alcohol ("OVI"), a violation of R.C. 4511.19(A)(1)(a), also a first-degree misdemeanor. Urine tests analyzed after his arrest showed the presence in his system of cocaine, methamphetamines, and amphetamines.

{¶ 7} The charges were tried together to a jury on February 15, 2022. Two 9-1-1 calls were played for the jury and admitted into evidence, and one of the 9-1-1 callers testified at trial. Two of the three responding deputies testified at trial, and recordings from their body cameras were played for the jury and admitted into evidence. Pope testified in his own defense.

{¶ 8} Pope testified that he was under a lot of financial and emotional stress around the time of the incident. He claimed that while driving on State Route 4, he was on the phone arguing with his children's mother. He explained that he paused at the stop

4.

sign at McDonald's because he was arguing with her and waiting for traffic to pass. Pope admitted being distracted and not driving as well as he should have, but he denied that he had done drugs that day. He blamed his poor performance on the balance tests on the fact that he has a bad knee, it was wet, and he was wearing flip-flops. Pope acknowledged that urine tests showed that he had controlled substances in his system, but he claimed that he had taken only Percocets, which a friend gave him for his knee pain. He insisted that he took the medication three days before the incident and believed it was pain medication. Pope maintained that he was driving "distracted and frustrated"—not impaired.

{¶ 9} The jury found Pope guilty of both charges. The trial court found that they were allied offenses that must merge for purposes of sentencing, and it sentenced Pope on the OVI. It imposed a jail sentence of 90 days, 80 of which it suspended, three of which could be served in a driver's intervention program, and four of which would be credited for time already served. Pope's license was suspended for 18 months. Pope's conviction and sentence were memorialized in a nunc pro tunc judgment entered on December 21, 2022.

{¶ 10} Pope appealed. He assigns the following errors for our review:

**ASSIGNMENT OF ERROR I:**

The trial court abused its discretion by denying Jacob Pope's untimely motion for leave to file a motion to suppress instanter, even

though Mr. Pope demonstrated good cause for the untimely filing and granting the motion was in the interest of justice.

**ASSIGNMENT OF ERROR II:**

Jacob Pope was denied effective assistance of counsel when his attorney failed to seek a continuance after being retained just a few days before the scheduled jury trial.

## II. Law and Analysis

{¶ 11} The trial court appointed counsel for Pope after he appeared in court on July 26, 2021. Discovery was exchanged. On November 4, 2021, the case was set for a January 11, 2022 jury trial. Due to a surge in Covid-19 infections in January 2022, the court sua sponte continued the trial date to February 8, 2022. The matter was reset for a plea hearing on February 11, 2022. In an order dated February 1, 2022, the matter was again scheduled for a jury trial on February 15, 2022.

{¶ 12} Despite the approaching trial date, Pope retained new counsel. His new attorney filed a substitution of counsel on February 10, 2022, and a motion for leave to file a motion to suppress evidence; he attached the proposed motion to the motion for leave. Following a brief hearing on February 11, 2022—which originally had been scheduled because Pope's counsel and the state indicated that the matter had been resolved—the trial court denied Pope's motion on the basis that it was "filed outside of Criminal Rule 12 and just three business days before the scheduled jury trial."

6.

{¶ 13} In his first assignment of error, Pope challenges the trial court's denial of his motion for leave to file a motion to suppress. In his second assignment of error, he claims that counsel was ineffective for failing to request a continuance of the trial date. We address each of these assignments in turn.

## A.  Denial of the Motion for Leave

{¶ 14} In his first assignment of error, Pope argues that the trial court abused its discretion when it denied his motion for leave to file a motion to suppress. Although he acknowledges that the motion was filed only two business days before trial and was untimely, he maintains that an untimely motion may be filed under Crim.R. 12(D) and (H) for good cause shown and in the interest of justice. He maintains that the factors that appellate courts customarily consider in determining whether good cause exists and whether the interests of justice favor permitting an untimely motion—whether the proposed motion has merit; whether it was attached to the motion for leave; whether prejudice would result to the state; and whether ample time existed in which to hold a hearing—weigh in his favor. He emphasizes that at the time he filed his motion, he had just retained new counsel; the motion to suppress was attached to the motion for leave and had merit; the state would have had ample time to review and respond to the motion; and because he had waived his speedy-trial rights, the court would have had ample time to consider the motion.

7.

{¶ 15} While not assigned as error, Pope criticizes his former counsel's failure to file a motion to suppress despite having received results of urine testing more than a month before trial.  He points out that his new attorney immediately filed a notice of substitution of counsel, the motion for leave, and the proposed motion to suppress even though he had only just received the videos of the deputies' body camera footage, test results, and other reports.  Pope argues that his proposed motion to suppress had merit because deputies lacked reasonable suspicion to detain him and probable cause to arrest him.  Although 9-1-1 callers reported that he was driving erratically and had passed out at the wheel, he emphasizes that deputies did not observe this and he contends that these behaviors were attributable to his exhaustion, distraction on the phone, and stress.  Pope insists that none of his behaviors warranted conducting field sobriety tests, he complains that horizontal and vertical nystagmus tests did not indicate impairment, so testing should have ceased, and he offers explanations for his poor performance on additional tests.

{¶ 16} The state responds that Pope's motion was filed just two business days before trial even though the trial date had been set for months.  It maintains that there was no time for it to respond to the motion to suppress or for the trial court to hold a hearing.  The state emphasizes that this lack of time was due to Pope's late decision to change counsel just days before trial and more than six months after he was arraigned.  It points out that Pope did not argue that he was unaware of the supporting facts, that the state withheld discovery, or that he was unable to discuss the relevant facts and issues with his

8.

prior counsel.  It insists that a last-minute decision to change counsel is insufficient to establish good cause for an untimely motion.

{¶ 17} Under Crim.R. 12(C)(3), a motion to suppress evidence must be filed before trial.  The time for filing a motion to suppress evidence is set forth in Crim.R. 12(D), which requires that the motion be filed within 35 days after arraignment or seven days before trial, whichever is earlier.  The failure to timely file a pretrial motion to suppress evidence constitutes waiver of the issue under Crim.R. 12(H), however, "for good cause shown," the court may grant relief from the waiver.  Additionally, under Crim.R. 12(D),  "[t]he court in the interest of justice may extend the time for making pretrial motions."

{¶ 18} "The decision to grant or deny leave of court to file an untimely motion to suppress evidence pursuant to Crim.R. 12(D) and (H), is a matter committed to the sound discretion of a trial court and is subject to review on appeal on an abuse of discretion standard."  (Citations omitted.)  *State v. Davis,* 6th Dist. Ottawa No. OT-09-032, 2010-Ohio-4383, ¶ 41.  An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  An unreasonable decision is one that lacks sound reasoning to support the decision.  *Hageman v. Bryan City Schools*, 10th Dist. Franklin No. 17AP-742, 2019-Ohio-223, ¶ 13.  "An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard."  *Id.,* quoting

9.

*Porter, Wright, Morris & Arthur, LLP v. Frutta del Mondo, Ltd.*, 10th Dist. Franklin No. 08AP-69, 2008-Ohio-3567, 2008 WL 2779511, ¶ 11. And an unconscionable decision is one "that affronts the sense of justice, decency, or reasonableness." *Id.*

{¶ 19} Pope cites *State v. Merritt*, 126 Ohio App.3d 711, 714, 711 N.E.2d 279 (6th Dist.1998), and *State v. Garrett*, 2d Dist. Greene No. 2004 CA 110, 2005-Ohio-4832, in support of his claim that the court abused its discretion when it denied his motion for leave.

{¶ 20} In *Merritt*, this court concluded that the trial court abused its discretion when it denied appellant's motion for leave to file a motion to suppress where "the case was not scheduled to go to trial for several months, and the failure to file a timely motion to suppress was due to the inaction of prior counsel." We found that under these circumstances, the interests of justice were best served by granting the motion for leave.

{¶ 21} In *Garrett*, the Second District reversed the trial court decision denying the defendant's motion for leave to file a motion to suppress. There, the motion was filed 32 days before the scheduled trial date and 66 days before the actual trial date. The court reasoned that the state would not have been prejudiced, there was ample time to hold a hearing, and suppression of the evidence at issue would have impacted the outcome of the trial.

{¶ 22} The state distinguishes *Merritt* and *Garrett* on the basis that the motions for leave were filed in those cases four months before trial and one month before trial,

10.

respectively, whereas Pope's motion was filed five days (two business days) before trial. It emphasizes that Pope has not argued that he was unaware of the facts allegedly supporting a motion to suppress, that the state withheld discovery, or that he was unable to discuss the relevant facts with his previous attorney. And it argues that toxicology tests became available to Pope more than a month before trial, yet Pope still filed no motion at that time.

{¶ 23} The state cites several cases in support of its position that the court did not abuse its discretion in denying Pope's motion: *State v. Smith*, 4th Dist. Ross No. 10CA3148, 2011-Ohio-602, *State v. Hoover,* 9th Dist. Wayne No. 02CA0056, 2003-Ohio-2344, *City of Solon v. Randazzo*, 8th Dist. Cuyahoga No. 76914, 2000 WL 1754005, *2 (Nov. 30, 2000), *State v. Overholt*, 9th Dist. Medina No. 2905-M, 1999 WL 635717, *7 (Aug. 18, 1999), and *State v. Williams,* 4th Dist. Ross No. 16CA3564, 2017-Ohio-7371, ¶ 16.

{¶ 24} In *Smith*, the Fourth District concluded that the trial court did not abuse its discretion when it denied defendant's motion for leave to file a motion to suppress, filed two weeks before trial. There, the defendant had filed a one-page memorandum, merely reciting that he had retained new counsel. It set forth no facts supporting the merit of the suppression issue, did not explain why the defendant could not have raised the suppression issue before waiver occurred, did not contend that he was unaware of any of the alleged facts supporting the suppression motion, did not assert that the state provided

untimely discovery or withheld any information, did not allege that defendant was unable to discuss the facts that might establish a Fourth Amendment violation with prior counsel, and alluded only to the fact that "it is not unusual for different attorneys to view the information provided in discovery in a different light." *Id.* at ¶ 40.

{¶ 25} In *Hoover,* the Ninth District concluded that the trial court did not abuse its discretion when it denied the defendant's motion for leave to file an untimely motion to suppress, filed 44 days after arraignment (no mention is made in the decision that the trial date had been scheduled). Although it recognized that the defendant had retained new counsel, the court found that the defendant had been represented by counsel from the inception of the charges against him, the record did not indicate that he was unaware of the circumstances surrounding the charges, his original attorney received discovery from the prosecutor within 35 days of his arraignment, and defendant had full knowledge of the surrounding facts and circumstances pertaining to his case within the time requirements of Crim.R. 12(D).

{¶ 26} In *Randazzo* at * 2, the Eighth District concluded that the trial court did not abuse its discretion in denying defendant's motion for leave to file a motion to suppress even though defendant had changed counsel before trial, the court knew that the defendant had a suppression issue, and the state would not have been prejudiced if the court had allowed the motion. It reasoned that the defendant had been represented by counsel from the inception of the charges against him, his original attorney attended

12.

several pretrials and requested discovery from the prosecutor, and the defendant had full knowledge of the circumstances and surrounding facts pertaining to his case within the time requirements of Crim.R. 12(C) (now numbered Crim.R. 12(D)).

{¶ 27} In *Overholt*, 9th Dist. Medina No. 2905-M, 1999 WL 635717, at *7, the Ninth District concluded that the trial court did not abuse its discretion when it denied defendant's motion for leave, filed by his newly-retained counsel 14 days before the scheduled trial date. The court reasoned that defendant had been represented by counsel from the inception of the charges against him, there was no indication that he was unaware of the circumstances surrounding the charges, and he was in full possession of the surrounding facts and circumstances pertaining to his case within the time requirements of Crim.R. 12(C) (now numbered Crim.R. 12(D)).

{¶ 28} And in *Williams,* 4th Dist. Ross No. 16CA3564, 2017-Ohio-7371, at ¶ 16, the Fourth District concluded that the trial court did not abuse its discretion in denying the defendant's motion for leave to file an untimely motion to suppress where the motion would have been the defendant's second motion to suppress and was filed 19 days before trial, subpoenas had been issued, and there was no time available for a hearing between the time the motion was filed and the jury trial was scheduled.

{¶ 29} After reviewing the case law, we conclude that the trial court did not abuse its discretion here. Although Pope's new attorney filed the motion for leave along with his notice of substitution of counsel and filed the proposed motion along with the motion

13.

for leave, the motion was filed just five business days—two business days—before the scheduled jury trial. Pope was aware of all pertinent facts well before he filed his motion and he was represented by counsel before retaining new counsel. The only reasons Pope provided to justify the late filing was that he had waived his speedy trial rights, and it took several months for the state to get test results back. Importantly, defense counsel conceded at the hearing that the results of the urine test had been provided to the public defender's office over a month before the motion was filed.

{¶ 30} Under the facts of this case, we find that the trial court did not abuse its discretion when it denied leave to file an untimely motion to suppress. *See also State v. Perry,* 3d Dist. Marion No. 9-12-09, 2012-Ohio-4656, ¶ 17 (affirming denial of motion for leave even though no trial date had been set, reasoning that defendant did not attach proposed motion to suppress to his motion for leave and had the same counsel throughout the case); *State v. Craig,* 5th Dist. Licking No. 17-CA-61, 2018-Ohio-1987, ¶ 52-58 (affirming denial of motion for leave where the defendant retained new counsel to conduct a second trial following hung jury, even though trial court sua sponte set a new trial date for almost two months after motion was filed and new counsel had only recently received discovery from the state); *State v. Young,* 9th Dist. Medina No. 2818-M, 1998 WL 887233, *2 (Dec. 16, 1988) (affirming denial of motion for leave where the motion was filed four months after arraignment and three months after counsel was appointed).

{¶ 31} We find Pope's first assignment of error not well-taken.

14.

## B. Ineffective Assistance of Counsel

{¶ 32} In his second assignment of error, Pope claims that counsel was ineffective for failing to request a continuance of the trial date. He emphasizes that the state expressly agreed to a continuance, speedy trial limitations had been waived, and the trial court gave defense counsel an opportunity to ask for a continuance, but counsel failed to follow through and make the request. Pope maintains that had counsel requested a continuance, there was a reasonable probability that it would have been granted, and he insists that counsel's failure to request a continuance resulted in the trial court denying his motion for leave to file a motion to suppress, thereby forcing him to abandon his meritorious Fourth Amendment challenges.

{¶ 33} The state responds that the decision whether to seek a continuance of a trial date is a matter of trial strategy that will not ordinarily constitute deprivation of the right to effective counsel. It further insists that the court made it clear that it was not likely to grant a continuance, therefore, Pope cannot demonstrate the prejudice element of a claim of ineffective assistance of counsel.

{¶ 34} Properly licensed Ohio lawyers are presumed competent. *State v. Banks,* 9th Dist. Lorain No. 01CA007958, 2002-Ohio-4858, ¶ 16. To establish ineffective assistance of counsel, an appellant must show "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's

15.

result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002).

{¶ 35} As recognized in *Strickland,* there are "countless ways to provide effective assistance in any given case." *Id.* at 689. "Judicial scrutiny of counsel's performance must be highly deferential." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689. Moreover, in matters involving trial strategy, "courts will generally defer to the judgment of trial counsel, even where 'another and better strategy' might have been available." *State v. Newsome*, 11th Dist. Ashtabula No. 2003-A-0076, 2005-Ohio-3775, ¶ 8, quoting *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980). "A court will only consider reversing on these grounds where the choice of trial strategy so deviates from the standard of reasonableness 'that ordinary trial counsel would scoff at hearing of it.'" *Id.,* quoting *State v. Burgins*, 44 Ohio App.3d 158, 160, 542 N.E.2d 707 (1988).

{¶ 36} At the February 11, 2022 hearing, the trial court asked the state's attorney whether the state had an opinion on the motion for leave. She indicated: "I mean, * * * if the trial was being held next week, absolutely  because * * * it wouldn't be filed seven

days prior to the trial date. No I don't have an objection if he wants to file it, if the trial is continued." The trial court and defense counsel then engaged in the following dialogue:

> Court: [Defense counsel], where are you on the trial date? You did not file a motion to continue the trial.

> [Defense Counsel]: Well, first, I have no objection to continuing the trial date. I have had a career-long practice of not screwing with the Court's calendar or whatever, and um, the Court could set the trial. We had the hearing as timely or as quickly as the Court can get it in [sic]. Certainly time waiver for speedy trial purposes would be waived, and we would make ourselves available for the convenience of the Court.

> And to be fair, Your Honor, I think the State should have time to prepare for the motion to suppress, as well, on the issues of detention for field sobriety tests.

> Court: The concerning thing to the Court is the late hour that the motion was filed, and I do understand that defense counsel was just retained and certainly expedited his filing based on when he was retained, but the case is from July. The trial date's been scheduled since November. It looks like it was continued once from January trial date to a February trial date due to the Covid numbers in January.

17.

It's now two business days before trial, set to go, so at this point the Court would deny the motion for leave as extremely untimely and keep the trial date of next Tuesday at 8:00 a.m. It is the oldest case on the docket for Tuesday, so it is guaranteed to go, unless it is resolved before then.

{¶ 37} First, the state is correct that "the decision whether to request a trial continuance is debatable, and involves a strategic choice of counsel that falls 'within the realm of trial strategy and tactics that will not ordinarily be disturbed on appeal.'" (Citations omitted.) *State v. Wynn*, 2d Dist. Montgomery No. 25097, 2014-Ohio-420, ¶ 90. "'Debatable trial tactics generally do not constitute a deprivation of effective counsel.'" *Id.,* quoting *State v. Phillips,* 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995), citing *State v. Clayton,* 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

{¶ 38} Second, the dialogue between the court and defense counsel demonstrates that although counsel did not explicitly request a continuance, the necessity of continuing the trial date was implicit in his filing of the motion for leave. The trial court understood that it would need to continue the trial date if it decided to grant the motion for leave.

{¶ 39} Finally, we agree with the state that the trial court's statements at the hearing demonstrate that it was not inclined to postpone the trial because it was scheduled to begin only two business days later. Because the trial court was not likely to grant a continuance, Pope cannot demonstrate that he was prejudiced by counsel's failure to file a motion to continue the trial date.

18.

**{¶ 40}** We find Pope's second assignment of error not well-taken.

### III.    Conclusion

**{¶ 41}** We find that the trial court did not abuse its discretion when it denied Pope's motion for leave to file a motion to suppress evidence given that the motion was filed just two business days before trial.  We find his first assignment of error not well-taken.

**{¶ 42}** We also find that trial counsel was not ineffective for failing to seek a continuance of the trial date.  The decision whether to request continuance is trial strategy, it was implicit in the motion for leave that a continuance of the trial date would be necessary, and the statements by the court indicate that there was not a reasonable probability that it would have granted a motion to continue the trial date.  We find Pope's second assignment of error not well-taken.

**{¶ 43}** We affirm the December 21, 2022 judgment of the Erie County Municipal Court.  The motion for a stay pending appeal, granted by the trial court on April 25, 2022 is terminated.  Pope is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
                                                            JUDGE

Christine E. Mayle, J.

_____

Myron C. Duhart, P.J.
CONCUR.
                                                            JUDGE

_____
                                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.