OPINION
{¶ 1} Defendant-appellant Bryan C. Garrett appeals from his conviction and sentence for operating a vehicle while intoxicated (hereinafter "OVI"), in violation of R.C. § 4511.19(A)(1), and driving in marked lanes, in violation of R.C. § 4511.33. On November 10, 2004, a jury found Garrett guilty on the OVI charge, a first degree misdemeanor. The trial court found Garrett guilty of the charge of driving in marked lanes, but found him not guilty of a seat belt violation based on lack of evidence.
 {¶ 2} The trial court sentenced Garrett to 360 days imprisonment, but suspended 90 days of the sentence. Garrett was also ordered to pay a fine of $1,000.00. The trial court denied Garrett's request for an appellate bond, and he subsequently filed notice of appeal on November 12, 2004.
 I {¶ 3} In the early morning hours of May 22, 2004, as the result of an anonymous call, Trooper J.D. Pyles of the Ohio State Highway Patrol located a suspected impaired driver traveling north on I-675 in Dayton, Ohio. The caller identified the suspect vehicle as a dark colored BMW and provided the vehicle's license plate number. Based on the caller's description of the vehicle and its location on the roadway, Trooper Pyles was able to follow the vehicle as it left the interstate and traveled onto Colonel Glenn Highway. Trooper Pyle testified that he observed the suspect vehicle driving erratically. He further observed the vehicle cross the center line twice and then stop approximately fifteen feet behind the stop bar before speeding up to 50 miles per hour in a 45 m.p.h. zone. At this point, Trooper Pyle stopped Garrett's vehicle.
 {¶ 4} Trooper Pyle testified that Garrett smelled strongly of alcohol and that his eyes were bloodshot and glassy. In response to questions from Trooper Pyle, Garrett stated that he was returning from a "seminar" and claimed that he had nothing to drink. At trial, Garrett testified that since his mother passed away, he and his siblings referred to funerals as "seminars." He testified that he and his cousin, Eric Thacker, who testified on Garrett's behalf, had attended his grandfather's funeral on May 21, 2004, and had not drank any alcohol at all throughout the day.
 {¶ 5} Suspecting Garrett of driving while intoxicated, Trooper Pyle asked appellant to step out of the vehicle and submit to sobriety testing. Trooper Pyle administered the horizontal gaze nystagmus test, and Garrett exhibited six of six indicators of intoxication. Garrett then performed the heel/toe walk and turn test. Trooper Pyle testified that Garrett exhibited four indicators of intoxication. Claiming that old injuries and the incline of the sidewalk prevented him from doing so, Garrett refused to submit to any further field sobriety testing.
 {¶ 6} Trooper Pyle then asked Garrett to submit to a Portable Breath Test (hereinafter PBT). Trooper Pyle testified that he discontinued the test because Garrett only pretended to blow into the mouthpiece. Garrett testified that he tried to blow into the mouthpiece as Trooper Pyle asked, but Pyle became angry with Garrett and removed the mouthpiece before any result could register. Thereafter, Trooper Pyle formally arrested Garrett for OVI, and placed him in the back of his police cruiser. The video tape of the stop reveals that Garrett became belligerent and argumentative at this point and refused to submit to any further chemical testing.
 {¶ 7} On August 11, 2004, Garrett's first attorney filed a motion to suppress. However, the trial court overruled the motion because it was filed more than 35 days after Garrett's arraignment, and thus, untimely. The trial court also held that the motion was not specific.
 {¶ 8} On August 18, 2004, Garrett obtained new counsel to represent him. Garrett's second counsel filed a motion for leave to file a motion to suppress on August 30, 2004. The trial court overruled the second motion, holding that it, too, was both untimely filed and non-specific. Defense counsel filed a motion to reconsider the denial of leave to file a motion to suppress, which was overruled on October 1, 2004. As stated earlier, a trial was held in this matter on November 10, 2004, and Garrett was found guilty of OVI and driving in marked lanes. Garrett was sentenced to 360 days in jail, with 90 days suspended, and required to pay $1,000.00 in fines.
 {¶ 9} From his conviction and sentence, Garrett appeals.
 II {¶ 10} Garrett's first assignment is as follows:
 {¶ 11} "THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR LEAVE TO FILE A SUPPRESSION MOTION."
 {¶ 12} In his first assignment of error, Garrett contends that the trial court erred when it overruled his motion for leave to file a motion to suppress after obtaining new counsel. Garrett argues that he was prejudiced by the fact that the trial court would not allow him to cross-examine Trooper Pyles with respect to his compliance with the National Highway Traffic Safety Association (hereinafter NHTSA) manual in conducting the field sobriety tests of appellant which led to his arrest. Thus, Garrett asserts that his conviction should be reversed and remanded so that he can be given the opportunity to dispute the legality of the initial stop and the administration of field sobriety testing through a motion to suppress. We agree.
 {¶ 13} Initially, it should be noted that Garrett does not dispute that his motion for leave to file a motion to suppress was both untimely and partially non-specific to the facts of the instant case. With respect to pretrial motions, Crim. R. 12(C)(3)provides that a motion to suppress evidence is a motion that must be raised prior to trial. Pursuant to Crim. R. 12(D), pretrial motions must be filed within 35 days after arraignment, or seven days before trial, whichever is earlier. However, the Rule permits the trial court to extend the time for filing a pretrial motion "in the interest of justice."
 {¶ 14} A defendant's failure to timely file a motion to suppress results in a waiver of that issue, "but the court for good cause shown may grant relief from the waiver." Crim. R. 12(H). The decision as to whether to permit leave to file an untimely motion to suppress is within the sound discretion of the trial court. Akron v. Milewski (1985),21 Ohio App.3d 140, 142, 487 N.E.2d 582. Thus, an appellate court will not reverse a trial court's decision regarding an untimely filed motion to suppress absent an abuse of discretion. Id. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio St. Med. Bd. (1993) 66 Ohio St.3d 619, 621,614 N.E.2d 748. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 15} Garrett's contention that he has demonstrated good cause for the untimely filing of the motion to suppress stems from the fact that the trial court precluded him from cross-examining Trooper Pyle with respect to the proper procedure for field sobriety testing contained in the NHTSA manual. In limiting the cross-examination of Trooper Pyle, the trial court relied on Traffic Rule 11, which states in pertinent part:
 {¶ 16} "(F) Effect of failure to raise defenses or objections
 {¶ 17} "Failure by the defendant to raise defenses or objections or to make motions and requests which must be made prior to plea, trial, or at the time set by the court pursuant to subdivision (C), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for good cause shown may grant relief from the waiver."
 {¶ 18} In the motion to suppress attached to the motion for leave, Garrett argues that one of the grounds for suppression of evidence was that the field sobriety tests administered by Trooper Pyle were not in strict compliance with standardized testing procedures. During the trial, defense counsel argued that he wanted to use the NHTSA manual to impeach Trooper Pyle's testimony. The trial court held that impeaching the trooper's testimony with the manual was tantamount to arguing that evidence with respect to Garrett's alleged intoxication was illegally obtained, and thus, the proper subject of a motion to suppress. The court went on to hold that defense counsel's failure to file a motion to suppress constituted waiver of that issue. However, it was the trial court's denial of Garrett's motion to suppress that forced defense counsel to abandon that line of questioning which was of significant legitimacy, given the lack of blood, breath, or urine results.
 {¶ 19} The State argues that the sole basis for the motion for leave was a change in counsel, and that a change in counsel does not rise to the level of good cause for the purpose of Crim. R. 12(H). The State does not offer any further argument that demonstrates how granting Garrett's motion for leave to file a motion to suppress would have prejudiced the State's case against appellant. A thorough review of the record indicates that while Garrett's motion for leave was untimely, the motion was filed approximately thirty-two days before the scheduled trial date, and approximately sixty-six days before the actual trial date of November 10, 2004.
 {¶ 20} We note that the motion to suppress attached to the motion for leave is partially non-specific as it contains a request that the breath test be suppressed when the evidence demonstrates that Garrett clearly refused any such tests. However, "in the interests of justice," the trial court should have held a suppression hearing to determine whether there was any merit to Garrett's contentions that the horizontal gaze nystagmus test and the heel/toe test were improperly administered. A hearing on the motion to suppress would not have prejudiced the State's case, and ample time existed in which to hold a hearing to thoroughly adjudicate the issues. In the absence of blood, breath, or urine results, clearly the field sobriety tests had some impact on the outcome of the trial. Thus, we hold that it was an abuse of discretion for the trial court to overrule Garrett's motion for leave to file a motion to suppress said evidence on the basis of untimeliness.
 {¶ 21} Garrett's first assignment of error is sustained.
 III {¶ 22} Garrett asserts the following assignment of errors:
 {¶ 23} "THE DECISION OF THE TRIAL COURT DENYING THE APPELLANT THE OPPORTUNITY TO FILE HIS MOTION TO SUPPRESS MUST BE REVERSED DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL, WHEN HE FAILED TO TIMELY FILE THE MOTION TO SUPPRESS."
 {¶ 24} "THE TRIAL COURT ERRED IN ALLOWING HEARSAY TESTIMONY, FROM AN ANONYMOUS CITIZEN DRIVER REGARDING APPELLANT'S STATUS AS `AN IMPAIRED DRIVER' IN VIOLATION OF APPELLANT'S RIGHTS GUARANTEED UNDER THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND IN VIOLATION OF THE RECENT U.S. SUPREME COURT CASE,CRAWFORD V. WASHINGTON (2004), U.S., 124 S.CT. 1354."
 {¶ 25} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL GUARANTEED BY THE FIFTH, SIXTH, AMD FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION, WHEN COUNSEL FOR THE STATE ENGAGED IN PROSECUTORIAL MISCONDUCT."
 {¶ 26} "APPELLANT'S CONVICTIONS ARE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 27} "THE TRIAL COURT ERRED WHEN IT IMPOSED MORE THAN THE MINIMUM SENTENCE UPON APPELLANT IN VIOLATION OF BLAKELY V. WASHINGTON (2004), 542 U.S., 124 S.CT. 2531."
 {¶ 28} In light of our ruling with respect to Garrett's first assignment, we hold that the remaining assignments of error are rendered moot.
 IV {¶ 29} Based upon the foregoing, Garrett's first assignment of error is sustained, the judgment of the Fairborn Municipal Court is reversed and vacated, and this matter is remanded for further proceedings in accordance with law and consistent with this opinion.
 {¶ 30} Judgment reversed, and cause remanded.
Brogan, P.J., concurs.