[Cite as *State v. Donaldson*, 2023-Ohio-234.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29473 |
| | : | |
| v. | : | Trial Court Case Nos. 2020 CR |
| | : | 01113/1; 2021 CR 00192 |
| ORA DONALDSON | : | |
| | : | (Criminal Appeal from Common Pleas |
| Appellant | : | Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 27, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

KAREN B. GROSETH, Attorney for Appellant

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-Appellant, Ora Donaldson, appeals from his convictions by way of a delayed appeal following a jury trial in Montgomery C.P. No. 2020 CR 1113/1 and a guilty plea in Montgomery C.P. No. 2021 CR 192.

{¶ 2} Donaldson's appointed appellate counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting the absence of non-frivolous issues for review. Donaldson was offered the opportunity by this court to raise issues after receiving a copy of appellate counsel's brief and relevant transcripts, but he did not file a brief.

{¶ 3} As required by *Anders*, we conducted an independent review of the record and found no issues with arguable merit for appeal. Therefore, counsel's *Anders* brief will be accepted, and Donaldson's convictions will be affirmed.

## I. Background

{¶ 4} On May 29, 2020, a Montgomery County grand jury indicted Donaldson in Case No. 2020 CR 1113/1 on four counts of theft greater than $1,000, two counts of receiving stolen property greater than $1,000, and three counts of receiving stolen property involving motor vehicles. On July 24, 2020, the grand jury filed Re-indictment B in that case, adding charges of theft of property greater than $1,000, aggravated possession of drugs (Schedule I or II), receiving stolen property (a first-degree misdemeanor), and engaging in a pattern of corrupt activity, a felony of the second degree.

{¶ 5} Subsequently, on March 1, 2021, an indictment was filed in Case No. 2021 CR 192, charging Donaldson with one count of receiving stolen property on or about January 11, 2021. On February 18, 2022, Donaldson's attorney filed motions to suppress evidence in both cases. The trial court orally denied the motion to suppress in

Case No. 2020 CR 1113/1 during a pretrial conference held on March 3, 2022. *See* Transcript of Proceedings, Final Pretrial Conference (March 3, 2022), p. 6-9 (finding the motion untimely). On March 8, 2022, Case No. 2020 CR 1113/1 proceeded to a jury trial, and Donaldson was convicted on all counts in the indictment and Re-indictment B that involved him. On March 29, 2022, Donaldson entered a plea of guilty to receiving stolen property in Case No. 2021 CR 192.

{¶ 6} Donaldson filed a motion for leave to file delayed notice of appeal in both cases on May 10, 2022. We sustained the motion on May 26, 2022.

## II. Analysis

{¶ 7} Pursuant to *Anders*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, we must conduct an independent review of the record to determine if the appeal at issue is wholly frivolous. *Id.* at 744. "*Anders* equates a frivolous appeal with one that presents issues lacking in arguable merit. An issue does not lack arguable merit merely because the prosecution can be expected to present a strong argument in reply, or because it is uncertain whether a defendant will ultimately prevail on that issue on appeal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8. Rather, "[a]n issue lacks arguable merit if, on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *Id.*, citing *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4.

{¶ 8} If we decide the appeal is frivolous, we may grant counsel's request to withdraw and then dismiss the appeal without violating any constitutional requirements,

or we can proceed to a decision on the merits if state law requires it. *State v. McDaniel*, 2d Dist. Champaign No. 2010-CA-13, 2011-Ohio-2186, ¶ 5, citing *Anders* at 744. However, if we find that any issues "involve legal points that are arguable on their merits, and therefore are not wholly frivolous, per *Anders* we must appoint other counsel to argue the appeal." *Pullen* at ¶ 2.

{¶ 9} Here, appellate counsel has raised six issues as potential assignments of error to aid the court in its independent review. Counsel concluded that none of these had arguable merit. Appellate counsel's brief was thorough and of excellent quality. We agree with her analysis that there are no issues of arguable merit.

### A. Insufficient Evidence of Monetary Threshold
### for Engaging in Pattern of Corrupt Activity

{¶ 10} The first issue presented for review is that Donaldson's conviction for engaging in a pattern of corrupt activity was based on insufficient evidence because the State failed to prove that the monetary threshold of $1,000 was met by each individual, not by the enterprise as a whole. This is not a correct statement either as to the facts or the law. No non-frivolous issue is found here.

{¶ 11} According to the *Anders* brief, Donaldson asserted in letters to his attorney that this threshold was not met because of the involvement of his co-defendant, Patricia Hammer. Hammer's case was docketed as Montgomery C.P. No. 2022 CR 1113/2, and the parties were tried together.[1]

---

[1] "We note that it is a common practice for appellate courts to take judicial notice of publically accessible online court dockets." (Citations omitted.) *State v. Estridge*, 2d

## 1. Insufficiency of the Evidence

**{¶ 12}** As noted, the first suggested argument is that the conviction for a pattern of corrupt activity is not supported by sufficient evidence. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In such situations, we apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states that:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted). *Id.* at paragraph two of the syllabus.

**{¶ 13}** Here, the sufficiency argument is based on the contention that the money threshold for application of Ohio's Racketeer Influenced and Corrupt Organizations Act ("RICO") was not reached. We review sufficiency issues de novo. *State v. Dent,* 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, ¶16.

---

Dist. Miami No. 2021-CA-25, 2022-Ohio-208, ¶ 12, fn.1. The docket records of the Montgomery County Common Pleas Court are accessible online.

## 2. Charges Against Donaldson and His Co-Defendant

{¶ 14} The original indictments in Case Nos. 2020 CR 1113/1 and 2020 CR 1113/2 were identical and contained nine counts, all of which pertained exclusively to Donaldson other than counts seven and eight. These two counts included charges against Hammer as well. Count seven alleged a violation of R.C. 2913.51(A) (receiving stolen property) based on the theft of a 1995 Coleman pop-up camper trailer between the dates of April 12 and April 14, 2020. The trailer was valued at more than $1,000 and less than $7,500. Count eight alleged a violation of R.C. 2913.02(A)(1) (theft, without consent) of the same property on April 12, 2020. Again, this count alleged that the property's value was more than $1,000 and less than $7,500.

{¶ 15} Re-indictment B was filed in Case No. 2020 CR 1113/1 on July 24, 2020, adding four additional charges against Donaldson. One charge (labeled as count four), alleged that Donaldson had engaged in a pattern of corrupt activity between April 30, 2015, and June 6, 2020, by engaging in the offenses listed in the A indictment, by engaging in the offenses listed in counts one and two of the B indictment, and by having prior convictions in 2017 and 2016.

{¶ 16} Similarly, additional charges were filed against Hammer in Re-indictment B in Case No. 2022 CR 1113/2. Again, the indictments in the two cases were identical. Count five alleged that Hammer had received stolen property (a drill set belonging to Country Club Landscaping) on June 6, 2020, in violation of R.C. 2913.51(A). That offense was listed as a first-degree misdemeanor, meaning the property was valued at

less than $1,000. *See* R.C. 2913.51(C). Count six of Re-indictment B alleged that Hammer had engaged in a pattern of corrupt activity between January 28, 2017, and June 6, 2020, by engaging in the offenses listed in counts seven and eight of the A indictment, by engaging the offense listed in count five of the B Re-indictment, and by having prior convictions in 2017. The counts involving a pattern of corrupt activity by both parties were alleged to be violations of R.C. 2923.32(A)(1) and were classified as second-degree felonies.

{¶ 17} On March 7, 2022, the State filed a motion in both cases asking to renumber the counts in the indictments. The counts would be renumbered from one to 15, with counts 14 and 15 pertaining to the pattern of corrupt activity charges against Donaldson and Hammer. As relevant to the pattern of corrupt activity charges against Donaldson, the State noted that, "As re-numbered, Ct.14 would identify Counts 1 through 11 as predicate offenses, as well as the previous conviction in 2017 CR 313/1. At this time, the State would strike previous conviction 2015 CR 1383/1 as an identified predicate offense." Motion to Amend (Mar. 7, 2022), p. 2.

{¶ 18} Pertinent to the pattern of corrupt activity charge against Hammer, the State said, "Similarly, as re-numbered, Ct.15 would identify Counts 7, 9, and 13 as predicate offenses, as well as the previous conviction in 2017 CR 313/3." *Id.* On March 8, 2022, the court granted the State's motion to amend the counts.

{¶ 19} After a jury trial, Donaldson was found guilty of all charges against him (amended counts one through 12) and count 14 (the pattern of corrupt activity charge). All the verdicts for offenses in counts one through 10 had special findings regarding the

fact that either the property was valued at more than $1,000 or that a motor vehicle was involved. Seven of these counts with special findings involved property worth $1,000 or more. Count 11 involved a first-degree misdemeanor for receiving stolen property (a hedge trimmer), and count 12 involved aggravated possession of drugs, a fifth-degree felony. *See* Verdict Entry, Case Nos. 2020 CR 1113/1 and 1113/2 (Mar. 18, 2022), p. 1-2.

{¶ 20} Hammer was found guilty of amended counts nine and 13 and amended count 15 (the pattern of corrupt activity charge). With respect to count nine, the jury made a special finding that "the value of the property stolen, destroyed, or involved WAS $1000.00 or more." *Id*. at p. 2. This was the former count seven in the original indictment, was a fifth-degree felony, and was a violation of R.C. 2913.51(A). *See* Motion to Amend (Mar. 7, 2022), at p. 2. Count 13 involved the first-degree misdemeanor for receiving stolen property (a drill set). *Id*. No value was assigned to this item, but "the only limitation on receiving stolen property qualifying as "corrupt activity" is that the value of the property at issue in any violation *or combination* of *violations* must exceed $1,000." (Emphasis added.) *State v. Rich*, 2d Dist. Montgomery No. 27356, 2018-Ohio-1225, ¶ 67, fn.9.

## 2. Application of Ohio's RICO Act

{¶ 21} R.C. 2923.32(A)(1) states that: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." R.C.

2923.31(C) defines an "enterprise" to include "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises."

{¶ 22} R.C. 2923.31(E) further states, in pertinent part, that:

"Pattern of corrupt activity" means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

* * *

For the purposes of the criminal penalties that may be imposed pursuant to section 2923.32 of the Revised Code, at least one of the incidents forming the pattern shall constitute a felony under the laws of this state in existence at the time it was committed * * *.

{¶ 23} As relevant here, R.C. 2923.31(I) provides that:

"Corrupt activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following:

* * *

(2) Conduct constituting any of the following:

* * *

(c) Any violation of section * * * 2913.02 [or] * * * 2913.51 of the Revised Code * * * when the proceeds of the violation, the payments made in the violation, the amount of a claim for payment or for any other benefit that is false or deceptive and that is involved in the violation, or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds one thousand dollars, or any combination of violations described in division (I)(2)(c) of this section when the total proceeds of the combination of violations, payments made in the combination of violations, amount of the claims for payment or for other benefits that is false or deceptive and that is involved in the combination of violations, or value of the contraband or other property illegally possessed, sold, or purchased in the combination of violations exceeds one thousand dollars.

{¶ 24} Courts have held that "offenses committed by accomplices will qualify as predicate acts sufficient to convict other participants in the enterprise of engaging in a pattern of corrupt activity." *State v. Barnes*, 6th Dist. Wood No. WD-07-024, 2008-Ohio-1854, ¶ 23, citing *State v. Gregg*, 11th Dist. Ashtabula No. 2006-A-0013, 2007-Ohio-1201, ¶ 31.

{¶ 25} As indicated in Donaldson's brief, he and Hammer have been involved in criminal activity together for several years. Appellant's Brief at p. 2-6 (in 2017, both were arrested and convicted of theft of more than $1,000 for theft of a trailer; in 2020, Hammer notarized a bill of sale for a trailer Donaldson stole; in April 2020, the police found Hammer and Donaldson in possession of a stolen pop-up camper; after Donaldson was arrested

and jailed after being found in possession of a truck stolen from a landscaping business, Donaldson called Hammer and asked her to "make some money" so he could post bond; Hammer then pawned tools stolen from the landscaping business along with the truck). Donaldson has not disputed these facts nor does the record contradict them; instead, Donaldson's argument is that Hammer's acts did not meet the threshold monetary requirement for a pattern of corrupt activity.

**{¶ 26}** In *State v. Stevens*, 139 Ohio St.3d 247, 2014-Ohio-1932, 11 N.E.3d 252, the Supreme Court of Ohio stated that "the minimum threshold found in R.C. 2923.31(I)(2)(c) must be applied to each individual within the enterprise and not to the enterprise as a whole. In essence, unless a person is involved in transactions on behalf of the enterprise in an amount equal to or greater than the statutory threshold, that person is not susceptible to being prosecuted under the Ohio RICO statutes." *Id.* at ¶ 4 (lead opinion).

**{¶ 27}** Donaldson's convictions clearly fit the statute's requirements, given that he had an accomplice with whom he was associated in criminal activity, had more than two incidents of corrupt activity, and the value of the property was far more than $1,000. Donaldson's violations of R.C. 2913.02 and R.C. 2923.51 are also listed in R.C. 2923.31(I)(2)(c). Consequently, there is no arguable merit to Donaldson's contention that his conviction for a pattern of corrupt activity was not based on sufficient evidence.

**{¶ 28}** Furthermore, Donaldson's argument about whether his co-defendant's convictions fit the threshold amount is irrelevant. Her acts did not need to meet the monetary threshold for a pattern of corrupt activity; they only needed to be sufficient to

satisfy the statutory requirement that Donaldson was engaged in an enterprise. As indicated, this can be done by establishing that an accomplice also participated in offenses.

{¶ 29} For example, in *State v. Jazdzewski*, 4th Dist. Washington No. 14CA15, 2015-Ohio-2416, a key witness in the defendant's conviction for engaging in a pattern of corrupt activity was his girlfriend, who had participated in some of the crimes as an accomplice. However, the prosecutor for the county in which most offenses were committed gave her immunity and did not criminally charge her. In addition, a prosecutor in an adjacent county agreed not to seek a prison sentence for revocation of the witness's community control. *Id.* at ¶ 19. *See also State v. Beverly,* 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, ¶ 16 (finding sufficient evidence that defendant and another party's actions constituted an "association-in-fact enterprise" because the record was "replete with examples of [the defendant and the other party] associating together for a common purpose of engaging in a course of conduct").

{¶ 30} Given the facts recited above, Hammer clearly engaged in corrupt acts with Donaldson and was an accomplice in association with him for purposes of establishing an enterprise. Moreover, even if the monetary threshold had to be satisfied, Hammer was convicted of a felony involving more than $1,000 and also of a misdemeanor involving receipt of stolen property. Again, while no value was assigned by a special jury finding for Hammer's misdemeanor conviction for receiving stolen property, the only limitation is that the value of a *combination of offenses* exceeds $1,000. *Rich*, 2d Dist. Montgomery No. 27356, 2018-Ohio-1225, at ¶ 67, fn.9. Here, that requirement was satisfied.

## B.  Sufficiency of Evidence to Support the Enterprise Element

**{¶ 31}** The second issue raised in the *Anders* brief is that the conviction of engaging in a pattern of corrupt activity was based upon insufficient evidence because the State failed to prove the enterprise element.   Donaldson's argument here is that there was insufficient evidence that anyone besides himself was involved in the enterprise. Donaldson's counsel concluded that the issue lacks arguable merit, and we agree.

**{¶ 32}** We have previously noted the definition of "enterprise" in R.C. 2923.31(C). The Supreme Court of Ohio has said that "the existence of an enterprise, sufficient to sustain a conviction for engaging in a pattern of corrupt activity under R.C. 2923.32(A)(1), can be established without proving that the enterprise is a structure separate and distinct from a pattern of corrupt activity."   *Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, at ¶ 13.

**{¶ 33}** In light of our prior discussion, it is clear that Donaldson was not the only individual involved in the enterprise, even though it was not a structure separate and distinct from the pattern of corrupt activity.   As noted, Hammond was also involved in the corrupt activity.   Consequently, there is no arguable merit to this potential assignment of error.

## C.  Evidence of Pattern of Corrupt Activity

**{¶ 34}** The third potential assignment of error is that the conviction of engaging in a pattern of corrupt activity was based on insufficient evidence because the State failed

to prove a pattern of corrupt activity. The enormous evidence on this issue prevents rejection of the *Anders* brief.

{¶ 35} We previously noted the statutory definition of a "pattern of corrupt activity," which "means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event. " R.C. 2923.31(E). "[T]he pattern of corrupt activity ' "must include both a relationship and continuous activity, as well as proof of the existence of an enterprise." ' " *Dent,* 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, at ¶ 25, quoting *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 13. (Other citation omitted.)

{¶ 36} Donaldson's brief recites many facts from the trial which support the relationship of Donaldson and Hammond and their continuous activity. Appellant's Brief at p. 2-6. Our review of the record confirms that this is the case. Accordingly, there is no arguable merit in the proposition that insufficient evidence supported the finding that a pattern of corrupt activity existed.

### D. Ineffective Assistance of Counsel

{¶ 37} The fourth issue raised as a potential assignment of error is that counsel was ineffective for not filing a timely motion to suppress and for not objecting to the State's introduction of various pieces of evidence.

{¶ 38} "The Sixth Amendment right to counsel in criminal proceedings presumes a

concomitant right to the effective assistance of counsel in representing the legal interests of the accused." *State v. Hatton*, 2d Dist. Montgomery No. 21153, 2006-Ohio-2670, ¶ 3, citing *Strickland v. Washington*, 466 U.S. 168, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Counsel's performance will not be deemed ineffective unless and until it is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice is shown to have arisen from counsel's deficient performance." *Id.* at ¶ 4, citing *Strickland*. "To show that he was prejudiced by his counsel's deficient performance, a criminal defendant must demonstrate that, were it not for counsel's errors, the result of the trial or proceeding would have been different." *Id.*, citing *Strickland* and *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶ 39}** As an initial point, Donaldson waived the right to appeal denial of the motion to suppress in Case No. 2021 CR 192 when he entered a guilty plea. *E.g., State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, ¶ 15 ("[a] valid guilty plea by a counseled defendant * * * generally waives the right to appeal all prior nonjurisdictional defects, including the denial of a motion to suppress"); *Dent* at ¶ 6 ("guilty plea waives ineffective assistance of counsel claims, except to the extent that counsel's alleged deficient performance caused the waiver of Defendant's trial rights and the entry of his plea to be less than knowing and voluntary"). Donaldson has not raised issues pertaining to his guilty plea, and our review of the plea hearing indicates no issues of arguable merit on that point. See Plea and Sentencing Transcript (Mar. 28, 2022), p. 4-12 (indicating that the trial court complied with Civ.R. 11(C) when accepting the plea).

**{¶ 40}** Furthermore, testimony from the trial and the transcript of the motion to

suppress hearing in Hammer's case (Case No. 2020 CR 1113/2, which was made a part of this record) reveals the lack of arguable merit of the issues raised by the motion to suppress in Case No. 2020 CR 1113/1.

**{¶ 41}** Specifically, both Donaldson and Hammer were seized and interrogated by the police on April 14, 2020, after the police had received a dispatch about suspicious behavior in an alley. When the police arrived at the scene, Donaldson and Hammer were sitting in a red pickup truck. Decision and Entry Overruling Defendant's Motion to Suppress, Montgomery C.P. No. 2020 CR 1113/2, (Dec. 5, 2020), p. 1-2. While checking these individuals' identification by computer, the police discovered that they both were wanted for questioning in connection with three thefts of vehicle trailers. *Id.* at p. 2-3. When the detective who had placed the "suspect locater cards" in the system arrived at the scene where Hammer and Donaldson were being detained, he checked the truck's license plate and VIN number and discovered the truck had been reported stolen from a location in Dayton, Ohio. This was contrary to the defendants' claim that it belonged to a friend who lived in Middletown, Ohio. *Id.* The truck also had a window that was broken out and a peeled steering column. *Id.* at p. 3.

**{¶ 42}** Hammer's motion to suppress was filed on August 31, 2020. After hearing the evidence at Hammer's suppression hearing, the trial court found that probable cause existed to detain Hammer and that she had knowingly, intelligently, and voluntarily waived her *Miranda* rights. *Id.* at p. 5-10.

**{¶ 43}** Donaldson was represented by counsel at all times during the case, which was not tried until March 8, 2022. Despite the fact that Hammer's suppression motion

had been filed in late August 2020, Donaldson waited until February 18, 2022 to file his own motion. There is no possible basis for concluding that the trial court erred in finding the motion untimely. In this regard, Crim.R. 12(D) states, with exceptions not relevant here, that "[a]ll pretrial motions * * * shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier." Failure to file within the time limit waives the right to file a suppression motion. *E.g. State v. Garrett,* 2d Dist. Greene No. 2004 CA 110, 2005-Ohio-4832, ¶ 14, citing Crim.R. 12(H). While a court may permit untimely filing for "good cause," *id.*, Donaldson's motion to suppress did not mention this point, nor did it assert any reason for the untimely motion.

{¶ 44} Furthermore, Donaldson's motion alleged the same grounds as Hammer's motion, i.e., that the seizure was illegal and that his *Miranda* rights had been violated. *See* Motion to Suppress, Case No. 2020 CR 1113/1 (Feb. 18, 2022), p. 2-5. Since the trial court had already rejected arguments as to the legality of the seizure, there could have been no possible ground for suppression, even if the court had decided to consider Donaldson's motion.

{¶ 45} In addition, as Donaldson's counsel notes, testimony at trial indicated that Donaldson agreed to speak with the police after being given *Miranda* warnings. Appellant's Brief at p. 12, citing Tr. at p. 975. "It is well established that a defendant who is subjected to custodial interrogation must be advised of his or her *Miranda* rights and make a knowing and intelligent waiver of those rights before statements obtained during the interrogation will be admissible." (Citations omitted.) *State v. Treesh*, 90 Ohio St.3d 460, 470, 739 N.E.2d 749 (2001). Our review of the record fails to disclose any basis for

finding that Donaldson's statements to the police should have been suppressed. Accordingly, a contention that trial counsel was ineffective in failing to timely file a suppression motion lacks any arguable merit.

**{¶ 46}** As a final point, there is no indication that any evidentiary calls existed to support a non-frivolous argument. Consequently, no surviving non-frivolous issues exist here.

### E. Denial of Motion to Dismiss RICO Count

**{¶ 47}** Appellate counsel's fifth potential assignment of error asserts that the trial court erred in denying Donaldson's motion to dismiss the RICO count under Crim.R. 29. "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995), and *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. We have already outlined the standards for a sufficiency analysis.

**{¶ 48}** Based on the preceding discussion and our review of the record, there is no non-frivolous issue here. The evidence presented at trial in support of the RICO count was overwhelming.

### F. Restitution

**{¶ 49}** The sixth issue raised by appellate counsel is that the trial court's restitution order was contrary to law. In this regard, Donaldson's counsel has said that she has

reviewed all records available to her and finds no arguable merit in this potential issue. However, counsel notes that she has not had access to the presentence investigation report ("PSI") and asks that we review this document. The PSI has been filed with our court and has been reviewed.

**{¶ 50}** In the termination entry filed in Case No. 2020 CR 1113/1, the trial court ordered Donaldson to pay restitution to seven victims in a total amount of $20,050. *See* Termination Entry, Case No. 2020 CR 1113/1 (Mar. 29, 2022), p. 2. No restitution was ordered in Case No. 2021 CR 192. *See* Termination Entry, Case No. 2021 CR 192 (Mar. 29, 2022). The court waived costs in both cases.

**{¶ 51}** "R.C. 2929.18(A)(1) gives a sentencing court discretion to order restitution but not in an amount greater than the amount of economic loss suffered by the victim as a direct and proximate result of the commission of the offense. The court may base the amount of restitution on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information." *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423, ¶ 3. "A hearing is mandated only if the offender, victim, or survivor disputes the amount." *Id*. at ¶ 23. "Before imposing a financial sanction * * * as part of a sentence, trial courts are required to consider a defendant's present and future ability to pay the financial sanction at the sentencing hearing." *State v. Phillips*, 2d Dist. Montgomery No. 29087, 2022-Ohio-1262, ¶ 23, citing R.C. 2929.19(B)(5). (Other citation omitted.). The court does not need to expressly state that it considered a defendant's ability to pay, but the record should contain evidence that the court

considered this. *Id.*, citing *State v. Culver*, 160 Ohio App.3d 172, 2005-Ohio-1359, 826 N.E.2d 367, ¶ 57 (2d Dist.).

{¶ 52} "On review of a trial court's imposition of restitution as part of a felony sentence, we apply the standard set forth in R.C. 2953.08(G)(2)(b), inquiring whether the imposition of restitution is clearly and convincingly contrary to law." *State v. Brown*, 2017-Ohio-9225, 103 N.E.3d 305, ¶ 25 (2d Dist.), citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7 and 10, and *State v. Becraft*, 2017-Ohio-1464, 89 N.E.3d 218, ¶ 17 (2d Dist.). After reviewing the record, we find no arguable merit in a contention that the restitution order was contrary to law.

{¶ 53} As an initial point, the sentencing transcript reveals that Donaldson did not challenge the restitution amounts, nor did he request a hearing. *See* Transcript of Proceedings (Plea and Sentencing Hearing (Mar. 28, 2022)). The transcript further reveals that the trial court did consider Donaldson's ability to pay and found that he was able to pay the restitution. *Id.* at p. 21. Consequently, there is no arguable basis for challenging the court's order in this regard.

{¶ 54} Furthermore, "[a] defendant who does not dispute an amount of restitution, request a hearing, or otherwise object waives all but plain error in regards to the order of restitution." *State v. Snowden*, 2019-Ohio-3006, 140 N.E.3d 1112, ¶ 88 (2d Dist.), citing *State v. Woods*, 2d Dist. Clark No. 2015-CA-75, 2016-Ohio-1103, ¶ 12. *See also State v. Floyd*, 10th Dist. Franklin No. 19AP-449, 2020-Ohio-4655, ¶ 13; *State v. West*, 3d Dist. Seneca No. 13-22-07, 2022-Ohio-4069, ¶ 23; and *State v. Beckwith*, 8th Dist. Cuyahoga No. 111024, 2022-Ohio-2362, ¶ 10 (no objection made to amount of restitution). "Notice

of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, 805 (1978), paragraph three of the syllabus.

{¶ 55} Applying this analysis here, no argument exists that is not frivolous, as the restitution amounts the trial court ordered matched the amounts of restitution noted in the PSI, except that Donaldson was actually required to pay less than might have been ordered. Specifically, the trial court omitted restitution for one victim, S.A., whose loss was valued at $1,000. *See* PSI, Victim Impact Statement, p. 10. The PSI also recommended payment of the sanctions, and the trial court followed the recommendations, other than the amount owed to S.A. *Id.* at p. 12. This was consistent with the statute, which allows restitution to be based on the PSI.

{¶ 56} Finally, our review indicates that the remainder of the restitution amounts were consistent with the record and with the PSI. Given these facts, there is no arguable merit to the contention that the restitution order was contrary to law or that plain error could exist.

{¶ 57} Accordingly, no issues of arguable merit regarding restitution are apparent in the record.

## III. Conclusion

{¶ 58} After conducting an independent review of the record as required by *Anders*, we find that, based on the facts and relevant law involved, there are no issues with arguable merit to present on appeal. Accordingly, the judgments of the trial court

are affirmed.   Appellate counsel is also granted permission to withdraw from further representation.

. . . . . . . . . . . . .


EPLEY, J. and LEWIS, J., concur.